## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SHANNON BRANCHAUD, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br>v.<br><br>YOUNG LIVING ESSENTIAL OILS, LC,<br><br>               Defendant. | Court File No._____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, Shannon Branchaud, individually and on behalf of all other similarly situated persons, by her undersigned attorneys, brings this Class Action Complaint against Defendant, Young Living Essential Oils, LC, ("Young Living" or "Defendant"), alleging the following based upon personal knowledge, and, as to all other matters, alleges, upon information and belief and investigation of her counsel, as follows:

## NATURE OF THE ACTION

1.      This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Classes, all of whom purchased essential oil products labeled as "therapeutic" from Defendant    (hereinafter the "Products").[1]

---

[1] A complete listing of the Products case be found here:
https://www.youngliving.com/en_US/products/c/essential-oil-products (last accessed December 2, 2020).

2.     Unbeknownst to Plaintiff and members of the Classes, and contrary to the express representations made on its label, the Products, which claim to be "therapeutic" and provide a number of health related benefits, provide no healthy or medicinal benefit whatsoever.

3.     As a result of Defendant's unlawful and deceptive conduct, Plaintiff and Members of the Classes have been, and continue to be, harmed by purchasing a product under false pretenses and paying more for it than they otherwise would have, if they would have purchased it at all.

4.     Plaintiff and the Classes bring claims for consumer fraud, breach of warranty, common law fraud and unjust enrichment and seek damages, injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.

## **PARTIES**

5.     Plaintiff, Branchaud, is a citizen of the State of Minnesota residing in the City of St. Cloud, and is a member of the Classes defined herein.  She purchased the Products for her own use during the four years preceding the filing of this Complaint and most recently in October of 2020.  Plaintiff Branchaud and members of the Classes suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendant set forth in this Complaint.  Plaintiff Branchaud and members of the Classes would not have purchased the Products had they been accurately labeled.

6.     Defendant, Young Living, is a Utah limited liability company with its principal place of business in Lehi, Utah.

2

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims of the proposed Class Members exceed $5,000,000 and because Defendant is a citizen of a different state than most Class Members.

8.     The Court has personal jurisdiction over Defendant because Defendant regularly conducts business in this District and/or under the stream of commerce doctrine by causing products to be sold in this District, including the Products purchased by Plaintiff.

9.     Venue is proper because a substantial portion of the events complained of occurred in this District and this Court has jurisdiction over the Defendant.

## FACTUAL ALLEGATIONS

### *Young Living's Business Model*

10.     Young Living is a company that purports to sell "essential oils" and other related products.  The company reported annual sales of more than $1 billion from 2015 and 2017.

11.     It was founded by Gary D. Young, a controversial figure who died in early 2018.  Mr. Young's controversial moments include: (a) being prosecuted for practicing medicine without a license on multiple occasions; (b) running a now shuttered "Young Living Research Clinic" in Springville, Utah, (subsequently replaced by a Young Living clinic in Ecuador) where he employed a physician convicted of manslaughter; and (c)

allegations he nearly killed a patient through vitamin C infusions which caused renal failure.[2]

12.     Young Living markets its products, including the Products, through its website and other e-commerce channels.  Young Living directs and controls all significant aspects of the sale of its well-known products, including the manufacturing, marketing, packaging, distribution, and pricing.  The products are sold throughout the United States and on consumer retail websites.

13.     In addition, Young Living markets its products, including the Products, by recruiting thousands of independent distributors who can sell directly to customers and earn commissions on sales to distributors recruited into a hierarchical network called 'downlines'. Young Living refers to this as a multi-level marketing company.

14.     In 2017, the *New Yorker* reported that distributors are required by Young Living to make $100 of purchases per month to qualify for a commission.

15.     According to a public income statement, in 2016 approximately 94% of Young Living's active members made less than a dollar, while less than one tenth of one percent (about one thousand Royal Crown Diamond distributors) made over a million dollars.

---

[2] *See* Rachel Monroe, How Essential Oils Became the Cure for Our Age of Anxiety, THE NEW YORKER, October 9, 2018. Mr. Young was also the subject of an investigative report in which workers at his Tijuana based "medical clinic" represented to an undercover investigative reporter from the Los Angeles Times (who had provided the clinic with a blood sample) that he had "aggressive cancer and liver dysfunction" which required immediate, expensive therapy at the clinic. When the clinic workers were confronted with the fact the blood sample was provided by a healthy tabby cat named "Boomer," they responded the cat likely had leukemia. According to Ms. Moore's article, Boomer is alive and well, despite Young Living's gloomy diagnosis.

16.     In April 2019, a nationwide class-action lawsuit was launched under the RICO Act against Young Living unrelated to the practices at issue in this complaint.  *See Julie O'Shaughnessy v. Young Living Essential Oils, LC*, Case No. 1:19-cv-412, Doc. 1. (W.D. Tex.).  However, the complaint described Defendant's business operations as "an unlawful pyramid scheme created under the guise of selling essential oils for quasi-medicinal purposes.  In truth, Young Living is nothing more than a cult-like organization falsely peddling the ever-elusive promise of financial success and an alternative lifestyle." *Id*.

### Young Living Falsely Markets its Essential Oils as Conferring Beneficial Health Effects

17.     Young Living sells a variety of essential oils and essential oil blends to consumers.  At a price of approximately $36.00 per bottle, consumers pay a premium for the Products when compared to other similar products that sell for as little as $13.00 per bottle.[3]

18.     As shown in the image below, Young Living prominently labels each of the Products as being "therapeutic" grade:

---

[3] *See* https://www.walmart.com/ip/Young-Living-Lavender-Essential-Oil-15ml-Certified-Therapeutic-Grade/944299468?wmlspartner=wlpa&selectedSellerId=11849 (last visited December 2, 2020) *compared to* https://www.revive-eo.com/product/organic-lavender-essential-oil/?gclid=CjwKCAjwm_P5BRAhEiwAwRzSO4OVQiyOk_0Gn4z2b2HexDUYmC6REOMbLHd936kHyJldV3IMfwUcWhoCfdMQAvD_BwE (last visited December 2, 2020).



19.     To support its claims that the Products are "therapeutic," Young Living makes a number of specific claims that the Products confer a physical, mental, or medicinal benefit.

20.     This includes claims that the Products:

- Will calm or relax consumers when applied or diffused, such as: Dragon Time "can help promote feelings of stability and calm during occasional times of moodiness"[4];

---

[4] https://www.youngliving.com/en_US/products/dragon-time-essential-oil-blend#:~:text=Dragon%20Time%E2%84%A2%20is%20a,during%20occasional%20times%20of%20moodiness (last visited August 19, 2020).

- Will help relieve consumers' feelings of anxiety when applied (or diffused), such as: Bergamot Oil "[m]ay help relieve tension during times of occasional stress"[5];

- Will help consumers sleep, such as: RC oil "May help support restful sleep" and other sleep related claims;

- Will support the feeling of normal clear breathing;

- Will bring product users clarity, focus, or alertness when applied (or diffused) as directed, such as: "Brain Power is a blend of essential oils . . . to promote a sense of clarity and focus when used aromatically"[6];

- Can be used to treat symptoms associated with depression, such as: Davana oil "boosts your positive outlook on life"[7];

- "Reduce[] feelings of occasional stress"[8]; and

- Will help consumers increase or maintain their energy levels when applied (or diffused) as directed, such as: Peppermint "helps to maintain energy levels when applied topically."

---

[5] https://www.youngliving.com/en_US/products/bergamot-essential-oil (last visited August 19, 2020).
[6] https://www.youngliving.com/en_US/products/brain-power-essential-oil-blend#:~:text=Brain%20Power%E2%84%A2%20is%20a,and%20focus%20when%20used%20aromatically (last visited August 19, 2020).
[7] https://www.youngliving.com/en_US/products/davana-essential-oil (last visited August 19, 2020).
[8] *Id.*

21.     Young Living has a specific definition of what it means when it identifies one of it oils as being "Young Living Therapeutic Grade."  On Young Living's website, the company's product marketing staff instructs its member-sales people:

> When describing therapeutic-grade essential oils to someone else, it's important to relay that **every essential oil Young Living distills or sources has the highest naturally-occurring blend of constituents to maximize the desired effect.**[9]

That same page goes on to say: "The YLTG promise is a bold statement—but you can share our products with confidence, knowing that Young Living truly has the experience to produce essential oils that work."

22.     Young Living directs the representations about the health related benefit claims of its Products to consumers, like Plaintiff and the members of the Classes, and Young Living intends that Plaintiff and members of the Classes read and rely on its representations.

23.     However, contrary to these representations, the Products actually provide no health related benefits whatsoever, leaving Plaintiff and Members of the Classes having paid a premium for a Product or Products that failed to provide the promised benefits.

24.     Indeed, in a recent proceeding before the National Advertising Division (NAD), the advertising industry's robust self-regulatory body which offers a vigorous dispute resolution process for advertisers and is charged with independently monitoring and reviewing national advertising for truthfulness and accuracy, Young Living was

---

[9] https://www.youngliving.com/blog/what-is-young-living-therapeutic-grade/ (last visited December 2, 2020) (emphasis in original).

challenged as to the truthfulness and accuracy of its health related claims about the Products, particularly that they are "therapeutic."[10]

25.　In that proceeding, Young Living failed to provide any competent and reliable scientific evidence to support its health related claims about the Products, including that they are "therapeutic."

26.　As a result of the proceeding (and subsequent failed appeal), the NAD directed, and Young Living agreed, to permanently discontinue its claim that the Products are "therapeutic."

27.　In addition Young Living agreed to permanently discontinue several other therapeutic-related claims about the Products, including that they :

- Promote feelings of calm and relaxation;

- Help consumers sleep;

- Reduce your anxiety;

- Provide clarity, focus and/or alertness;

- Energize;

- Improvers consumers' mood and increase their motivation.

28.　Defendant, a billion dollar company, has the resources to conduct its own testing, but did not.　Defendant had no reasonable basis to believe the truthfulness and accuracy of its health related claims about the Products;　knew or should have known that

---

[10] https://bbbprograms.org/media-center/decisions-details/nad-recommends-that-young-living-essential-oils-discontinue-therapeutic-grade-and-health-related-claims-for-its-essential-oils-advertiser-to-appeal (last visited December 2, 2020).

the health related claims about the Products were not accurate; and, knew or should have known that its labeling, advertising and/or marketing was false and misleading to consumers.

### *Young Living's Marketing and Sale of the Products Violates Federal Law*

29.     Section 5(a) of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

30.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

31.     Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics. For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, the Products are either "foods" or "drugs" as defined in Section 15(b) and (c) of the FTC Act, 15 U.S.C. §§ 55(b), (c).

32.     Under these provisions, companies must have a reasonable basis for making objective product claims, including claims that a product can treat specific conditions, before those claims are made.[11]

33.     As alleged herein, Young Living has represented the Products confer a healthy or medicinal benefit.

---

[11] See Advertising Substantiation Policy Statement, appended to Thompson Medical Co., 104 F.T.C. 648, 839 (1984), aff'd, 791 F.2d 189 (D.C. Cir. 1986) ("Advertising Substantiation Policy Statement").

34.     These representations are false or misleading or were not substantiated at the time the representations were made.

35.     Therefore, the making of the representations as set forth in Paragraphs 19-26 of this Complaint constitutes a deceptive act or practice and the making of false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a), 52.

36.     Relatedly, Young Living's labeling, advertising, and marketing of the Products violates the Federal Food, Drug, and Cosmetic Act (the "FDCA Act"), 21 U.S.C. § 321(g)(1)(B).

37.     The Products are promoted for conditions that cause them to be drugs under the Act because, as alleged herein, they are intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease.

38.     The intended use of a product may be determined by, among other things, its labeling, advertising, and the circumstances surrounding its distribution, 21 C.F.R. § 201.128.

39.     Moreover, the Products are also "new drugs" under section 201(p) of the Act (21 U.S.C. § 321(p)), because they are not generally recognized as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling.

40.     Under sections 301(d) and 505(a) of the Act (21 U.S.C. §§ 331(d) and 355(a)), a new drug may not be introduced or delivered for introduction into interstate commerce unless an FDA-approved application is in effect for the drug.

41.     FDA approves a new drug on the basis of scientific data and information demonstrating that the drug is safe and effective.

42.     As alleged herein, and as found by the NAD, Young Living has no competent and reliable scientific evidence to support its health related claims about the Products.

43.     On information and belief, there is no FDA-approved application in effect for the Products.

44.     Because there is no FDA-approved application in effect for the Products, Defendant's labeling, advertising, marketing and sale of the Products violates the FDCA Act.

### Young Living Has Previously Falsely Marketed its Essential Oils as Conferring Beneficial Health Effects

45.     This is not the first time Young Living has been admonished for falsely marketing its essential oils products.

46.     In September of 2014, the FDA issued a warning letter to Young Living because it promoted its essential oils for conditions such as, but not limited to, viral infections (including ebola), Parkinson's disease, autism, diabetes, hypertension, cancer, insomnia, heart disease, post-traumatic stress disorder (PTSD), dementia, and multiple sclerosis, that are not amenable to self-diagnosis and treatment by individuals who are not medical practitioners.[12]

### Young Living Continues to Falsely and Misleadingly Market the Products

47.     Defendant continues to falsely and misleadingly label, market, and advertise, and/or sell the Products to the general public as conferring a healthy or medicinal benefit,

---

[12] https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/young-living-09222014 (last visited December 2, 2020).

including that they are "therapeutic."  The only conceivable purpose for falsely and deceptively making these claims about the Products is to stimulate sales and enhance Defendant's profits.

48.     Indeed, Defendant surely understands that no reasonable consumer would have paid a premium for the Products if they knew they did not provide the promised benefits.

49.     Most consumers are unable to verify that products such as Defendant's are accurately labeled.  Therefore, consumers are particularly vulnerable to these kinds of false and deceptive labeling, marketing, and advertising practices.

50.     Because of Defendant's deceptive labeling, marketing and advertising practices, consumers were and continue to be fraudulently induced to purchase and pay a premium for the Products.

### *Plaintiff Relied Upon the Products' Label to Purchase and Use the Products*

51.     Plaintiff was herself a victim of Defendant's mislabeling of the Product.

52.     On several occasions over the last four years, and most recently in September of 2020, Plaintiff purchased the Product online.

53.     Before purchasing the Products, Plaintiff reviewed the labels' claim that they were "therapeutic-grade" and that they would provide a physical, mental, or medicinal benefit if used.  Plaintiff purchased the Products believing these claims that they would confer a physical, mental, or medicinal benefit, as stated on the bottle.

54.     Plaintiff would not have purchased and used the Products had she known that they did not provide the promised benefits, or at the very least she would not have purchased the Products at the inflated price Young Living charged.

55.     Plaintiff is in the same Class as all other consumers who purchased Defendant's Products during the relevant time period.  Plaintiff and the Class Members were in fact misled by Defendant's misrepresentations in respect to the Products.  Plaintiff and Class Members would have purchased other oils, if any at all, if they had not been deceived by the misleading and deceptive labeling, marketing, and advertising of the product by Defendant.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

57.     Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.  The class definition(s) may depend on the information obtained through discovery.  Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following Classes:

> **National Class:**  All persons within the United States who purchased essential oil products labeled as "therapeutic" from Young Living for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").

> **Consumer Fraud Multi-State Class:**  All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Washington and Wisconsin who purchased essential oil products labeled as "therapeutic" from Young Living for personal

consumption from the beginning of any applicable limitations period through the date of class certification (the "Consumer Fraud Multi-State Class").[13]

**Minnesota Sub-Class:** All persons in Minnesota who purchased essential oil products labeled as "therapeutic" from Young Living for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "Minnesota Sub-Class").

58.     Excluded from the Classes are the Defendant, and any entities in which the Defendant has a controlling interest, Defendant's officers, directors, and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiff's counsel, their staff members, and their immediate family.

59.     Plaintiff reserves the right to amend the Class definitions or add a Class if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

60.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

---

[13] The Minnesota Consumer Fraud Act, Minn. Stat. §§ 325F.68, *et seq.*, makes it unlawful to act, use or employ "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice" on the part of entities conducting business with consumers within the State of Minnesota. The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged herein: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201 et seq.); Illinois (815 ILCS 505/1, et seq.), Massachusetts (Mass. Gen. Laws Ch. 93A et seq.); Michigan (Mich. Comp. Laws § 445.901 et seq.); Missouri (Mo. Rev. Stat. § 407.010 et seq.); New Hampshire (N.H. Rev. Stat. § 358-A:1); New Jersey (N.J. Stat. § 56:9-1, et seq.); New York (N.Y. Gen. Bus. Law § 349, et seq.); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Washington (Wash. Rev. Code § 19.86010, et seq.) and Wisconsin (WIS. STAT. § 100.18, et seq.).

61.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands to hundreds of thousands. The number of members of the Classes is presently unknown to Plaintiff, but may be ascertained from Defendant's books and records.  Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

62.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

a.    Whether the Product is "therapeutic," as claimed on its label;

b.    Whether Defendant had a reasonable basis for claiming that Products are "therapeutic";

c.    Whether the Products confer a healthy or medicinal benefit;

d.    Whether Defendant had a reasonable basis for claiming that Products confer a healthy or medicinal benefit;

e.    Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

e.    Whether Defendant's actions violate the state consumer fraud statutes invoked below;

f.    Whether Plaintiff and the members of the Classes were damaged by Defendant's conduct;

g.    Whether Defendant was unjustly enriched at the expense of Plaintiff and Class Members;

h.    Whether Plaintiff and Class Members are entitled to injunctive relief.

63.     Defendant engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce, on behalf of himself and the other Members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

64.     **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are typical of the claims of the other Members of the Classes because, among other things, all Members of the Classes were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiff or to any particular Members of the Classes.

65.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Members of the Classes he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and he will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and the undersigned counsel.

66.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, Members of the Classes would continue to suffer the harm described herein, for which they would have no remedy.  Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as

create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

67.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Defendant from selling or otherwise distributing the Products as labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised health or medicinal benefits.

68.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Classes to individually seek redress for Defendant's wrongful conduct.  Even if Members of the Classes could afford individual litigation, the court system could not.  Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court

system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I

### Violation of the State Consumer Fraud Acts
### (On Behalf of the Consumer Fraud Multi-State Class)

69.　　Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

70.　　The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

71.　　Plaintiff and the other Members of the Consumer Fraud Multi-State Class have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Class because Plaintiff and Members of the Consumer Fraud Multi-State Class have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

72.　　Defendant engaged in unfair and/or deceptive conduct, including, but not limited to the following:

　　　　a.　Representing on their label that the Products are "therapeutic," with no reasonable basis to do so and when, in fact, they are not; and

b. Representing that the Products confer a healthy or medicinal benefit when, in fact, they do not and/or Young Living had no reasonable basis to believe they did have such a benefit.

73. Defendant intended that Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class would rely upon its unfair and deceptive conduct and a reasonable person would in fact be misled by this deceptive conduct described above.

74. As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

75. In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT II

**Violation of the Minnesota Consumer Fraud Act, Minn. Stat. §§ 325F.68, *et seq*.**
**(In the Alternative to Count I and on behalf of the Minnesota Sub-Class)**

76. Plaintiff incorporates by reference paragraphs 1-68 of this Complaint as if fully stated herein.

77. Defendant, Plaintiff, and members of the Minnesota Subclass are each a "person" as defined by Minn. Stat. § 325F.68(3).

78. Defendant's goods, services, commodities, and intangibles (specifically, its Defendant's Product) are "merchandise" as defined by Minn. Stat. § 325F.68(2).

79. Defendant engaged in "sales" as defined by Minn. Stat. § 325F.68(4).

80.     Defendant engaged in fraud, false pretense, false promise, misrepresentation, misleading statements, and deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69(1), as described herein.

81.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

82.     Defendant's fraudulent, misleading, and deceptive practices affected the public interest, including thousands of Minnesotans who purchased and/or used Defendant's Product.

83.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Minnesota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Product.

84.     Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiff and Minnesota Subclass members seek all monetary and non-monetary relief allowed by law, including damages, declaratory or other equitable relief, and attorneys' fees, disbursements, and costs.

## COUNT III

**Violations of the Minnesota Uniform Deceptive**
**Trade Practices Act, Minn. Stat. §§ 325D.43, *et seq*.**
**(In the Alternative to Count I and on behalf of the Minnesota Sub-Class)**

85.     Plaintiff incorporates by reference paragraphs 1-68 of this Complaint as if fully stated herein.

86.     Plaintiff brings this claim against Defendant on behalf of herself and the Minnesota Sub-Class (for purposes of this Count, the "Classes").

87.     By engaging in deceptive trade practices in the course of its business and vocation, directly or indirectly affecting the people of Minnesota, Defendant violated Minn. Stat. § 325D.44, including the following provisions: (a) representing that its goods and services had characteristics, uses, and benefits that they did not have, in violation of Minn. Stat. § 325D.44(1)(5); (b) representing that goods and services are of a particular standard or quality when they are of another, in violation of Minn. Stat. § 325D.44(1)(7); (c) advertising goods and services with intent not to sell them as advertised, in violation of Minn. Stat. § 325D.44(1)(9); and (d) engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. § 325D.44(1)(13).

88.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

89.     Had Defendant disclosed to Plaintiff and Minnesota Subclass members that it misrepresented Defendant's Product, omitted material information regarding the true abilities of the Product, and was otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling the mislabeled Product.  Instead, Defendant represented that its Product promoted certain benefits that it did not. Plaintiff and the Minnesota Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

90.     Defendant's knowledge of Defendant's Product's abilities put it on notice that Defendant's Product was not as it advertised.

91.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Minnesota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Product.

92.     Pursuant to Minn. Stat. § 325D.45, Plaintiff and Minnesota Subclass members seek all non-monetary relief allowed by law, including declaratory relief and attorneys' fees and costs.

### COUNT IV

**Unjust Enrichment**
**(On Behalf of the National Class and the Minnesota Sub-Class)**

93.     Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

94.     Plaintiff brings this claim against Defendant on behalf of herself and the Minnesota Sub-Class.

95.     Plaintiff and the other Members of the Minnesota Sub-Class conferred benefits on Defendant by purchasing the Products.

96.     Defendant received the benefits to the detriment of Plaintiff and the other Members of the Minnesota Sub-Class because Plaintiff and the other Members of the

Minnesota Sub-Class purchased a mislabeled product that is not what they bargained for and that did not provide any therapeutic benefit whatsoever.

97.     Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other Members of the Minnesota Sub-Class. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling, marketing and advertising of the Products was misleading to consumers, which caused injuries to Plaintiff and the other Members of the Minnesota Sub-Class, because they would have not purchased the product otherwise.

98.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the other Members of the Minnesota Sub-Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other Members of the Minnesota Sub-Class for its unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Count, respectfully requests that the Court enter judgment as follows:

A.     For Count I: Declaring that this action is a proper class action, certifying the Consumer Fraud Multi-State Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

B.     For Count II: Declaring that this action is a proper class action, certifying the Minnesota Sub-Class as requested herein, designating

Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

C.   For Count III: Declaring that this action is a proper class action, certifying the Minnesota Sub-Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

D.   For Count IV: Declaring that this action is a proper class action, certifying the Classes as requested in Count IV, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

E.   Enjoining Defendant from engaging in the unlawful conduct set forth herein;

F.   Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other Members of the Class;

G.   Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

H.   Ordering such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated: December 3, 2020                     Respectfully Submitted,

                                            **LOCKRIDGE GRINDAL NAUEN P.L.L.P**.

                                            By:  /s/  Robert K. Shelquist
                                            Robert K. Shelquist, #21310X (MN)
                                            Rebecca A. Peterson, #0392663 (MN)
                                            100 Washington Avenue South, Suite 2200
                                            Minneapolis, Minnesota  55401
                                            Telephone:  612-339-6900
                                            rkshelquist@locklaw.com
                                            rapeterson@locklaw.com

                                            Gary M. Klinger*
                                            **MASON LIETZ & KLINGER LLP**
                                            227 W. Monroe Street, Ste. 2100
                                            Chicago, Illinois 60606
                                            Phone: 202.640.1160
                                            Fax: 202.429.2294
                                            gklinger@masonllp.com

                                            Gary E. Mason*
                                            **MASON LIETZ & KLINGER LLP**
                                            5101 Wisconsin Ave. NW Ste. 305
                                            Washington DC 20016
                                            Phone: 202.640.1160
                                            Fax: 202.429.2294
                                            gmason@masonllp.com

                                            **SIRI & GLIMSTAD LLP**
                                            Aaron Siri
                                            Mason A. Barney
                                            200 Park Avenue, Seventeenth Floor
                                            New York, New York 10166
                                            Tel: (212) 532-1091
                                            aaron@sirillp.com
                                            mbarney@sirillp.com

                                            *Pro hac vice forthcoming
                                            *Attorneys for Plaintiffs and the Class*