**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| SHANNON BRANCHAUD, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>     v.<br><br>YOUNG LIVING ESSENTIAL OILS, LC,<br><br>               Defendant. | Court File No.: 0:20-cv-02450-MJD-LIB |

**DEFENDANT YOUNG LIVING ESSENTIAL OILS, LC'S**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS**
**MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)**

TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   BACKGROUND ................................................................................ 3

III.  LEGAL STANDARD ........................................................................ 6

IV.   ARGUMENT .................................................................................... 8

      A.   The Court Should Enforce the Parties' Agreed-Upon, Mandatory
           Forum-Selection Clauses Under § 1404(a). .................................... 8

           1.   Plaintiff Consented to the Agreement and Its Forum-Selection
                Clauses. ........................................................................ 8

           2.   The Forum-Selection Clauses Apply to Plaintiff's Claims. ............. 10

           3.   The Forum-Selection Clauses Are Valid and Enforceable. ............. 13

           4.   The Public Interest Factors Weigh in Favor of Transferring the
                Case to the District of Utah. ............................................. 15

      B.   Alternatively, the Court Should Transfer this Case to the District of
           Utah Because It Is the More Convenient Venue. ......................... 17

           1.   The District of Utah Is a Proper Venue. .......................... 18

           2.   The Convenience of the Parties and Witnesses Favors Transfer
                to Utah. ...................................................................... 18

           3.   The Interests of Justice Favor Transfer to Utah. ................ 19

V.    CONCLUSION ................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Airtel Wireless, LLC v. Mont. Elec. Co.*,
  393 F. Supp. 2d 777 (D. Minn. 2005) ......................................................... 15

*Ansari v. Qwest Commc'ns Corp.*,
  414 F.3d 1214 (10th Cir. 2005) .................................................................... 1

*In re Apple, Inc.*,
  602 F.3d 909 (8th Cir. 2010) ......................................................... 18, 19, 20

*Atl. Marine Constr. Co. v. U.S. Dist. Ct.*,
  571 U.S. 49 (2013) ............................................................................. *passim*

*Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*,
  124 F. Supp. 3d 878 (D. Minn. 2015) ..................................................... 8, 13

*Brown v. Glob. Cashspot Corp.*,
  2017 WL 3278938 (D. Minn. July 14, 2017) .............................................. 14

*DesignSense, Inc. v. MRIGlobal*,
  2013 WL 3205569 (D. Mo. June 25, 2013) ................................................ 11

*Dominion Austin Partners, L.L.C. v. Emerson*,
  248 F.3d 720 (8th Cir. 2001) ..................................................................... 21

*Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*,
  499 F.2d 1391 (3d Cir. 1974) ....................................................................... 1

*Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*,
  118 F.3d 619 (8th Cir. 1997) ................................................................ 11, 12

*Gen. Mills Operations, LLC v. First Star Custom Foods, Ltd.*,
  789 F. Supp. 2d 1148 (D. Minn. 2011) ............................................. 8, 14, 16

*Graphic Sys., Inc. v. Avanti Comput. Sys. Ltd.*,
  2018 WL 1277007 (D. Minn. Mar. 12, 2018) (Davis, J.) ............................. 7

*Heath v. Travelers Cos.*,
  2009 WL 1921661 (D. Minn. July 1, 2009) ................................................. 9

ii

*Hitachi Cap. Am. Corp. v. McCollum*,
    2020 WL 3977229 (D. Minn. July 14, 2020) .................................................. 13, 14, 15

*Hughes v. Wal-Mart Stores, Inc.*,
    250 F.3d 618 (8th Cir. 2001) ................................................................................. 17, 21

*Inland Bulk Transfer Co. v. Cummins Engine Co.*,
    332 F.3d 1007 (6th Cir. 2003) ...................................................................................... 1

*Klatte v. Buckman, Buckman & Reid, Inc.*,
    995 F. Supp. 2d 951 (D. Minn. 2014).................................................. 17, 19, 20, 21

*Leonard v. Del. N. Cos. Sport Serv.*,
    861 F.3d 727 (8th Cir. 2017) ..................................................................................... 11

*Lewallen v. Green Tree Servicing, L.L.C.*,
    487 F.3d 1085 (8th Cir. 2007) ..................................................................................... 1

*M.B. Rests., Inc. v. CKE Rests., Inc.*,
    183 F.3d 750 (8th Cir. 1999) ................................................................................ 6, 15

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972).......................................................................................................... 6

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*,
    49 F.3d 323 (7th Cir. 1995) ......................................................................................... 1

*O'Shaughnessy v. Young Living Essential Oils, LC*,
    No. 1:19-cv-00412-LY, ECF No. 74 (W.D. Tex. June 29, 2020) .......................... 2, 10

*Penhall v. Young Living Essential Oils, LC*,
    3:19-cv-02340-JLS-RBB, ECF No. 36-1 (S.D. Cal. Aug. 17, 2020) ..................... 2, 10

*Perrill v. Equifax Info. Servs., LLC*,
    2014 WL 2986665 (D. Minn. June 30, 2014) (Davis, J.) ................................... 7, 8, 21

*Rasschaert v. Frontier Commc'ns Corp.*,
    2013 WL 1149549 (D. Minn. Mar. 19, 2013) ............................................................. 9

*Servewell Plumbing, LLC v. Fed. Ins. Co.*,
    439 F.3d 786 (8th Cir. 2006) ..................................................................................... 14

*Siebert v. Amateur Athletic Union of the U.S., Inc.*,
    422 F. Supp. 2d 1033 (D. Minn. 2006) ....................................................................... 9

*Terra Int'l, Inc. v. Miss. Chem. Corp.*,
  119 F.3d 688 (8th Cir. 1997) ............................................................ 13, 17, 21

*In re Trusteeship Created by JER CRE CDO 2005-1, Ltd.*,
  No. 12-2791 (MJD/JSM), 2013 WL 1364258 (D. Minn. Apr. 4, 2013) .................... 19

*UAW v. Gen. Elec. Co.*,
  714 F.2d 830 (8th Cir. 1983) ............................................................ 13

*In re Union Elec. Co.*,
  787 F.3d 903 (8th Cir. 2015) ............................................................ 6

*United Fire & Cas. Co. v. Weber, Inc.*,
  434 F. Supp. 3d 729 (D. Minn. 2020) .................................................... 6

## Statutes

28 U.S.C. § 1332(d)(2) ...................................................................... 18

28 U.S.C. § 1391(b)(1) ...................................................................... 18

28 U.S.C. § 1391(c)(2) ...................................................................... 18

28 U.S.C. § 1404(a) ................................................................... *passim*

## Other Authorities

United States District Courts, *National Judicial Caseload Profile* (2020),
  *available at*
  https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distpr
  ofile0930.2020.pdf ....................................................................... 16

## I.    INTRODUCTION

Plaintiff Shannon Branchaud ("Plaintiff") agreed with Defendant Young Living Essential Oils, LC ("Young Living") that any dispute "arising out of or relating to" the parties' agreement will be settled by arbitration in Salt Lake City, Utah, and that in "any legal action not subject to arbitration," venue will be in Salt Lake City, Utah.  *See* Ex. A at § 11; Ex. B at §§ 13.2.2-13.3.[1]  Young Living asks the Court to transfer this case to the District of Utah, Salt Lake City Division pursuant to 28 U.S.C. § 1404(a), where it will seek to compel arbitration.[2]

As explained further below, Plaintiff is a Young Living independent distributor, or "member," and through the member agreements establishing that relationship purchased essential oils that form the basis of her complaint.  To become a member of Young Living,

---

[1]    Unless otherwise noted, all exhibit references are to the Declaration of K.C. Barrow ("Barrow Decl.").

[2]    Young Living seeks to transfer before seeking to compel arbitration because most courts have held that only a district court in the agreed-upon forum has authority to compel arbitration under the Federal Arbitration Act.  *See, e.g., Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219-1220 (10th Cir. 2005); *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995); *Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974).  Seeking to transfer first thus comports with the parties' agreement both to bring any legal actions in Utah, and that arbitration would be conducted there.  Young Living expressly reserves its right to seek to compel arbitration.  *See Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007) (a party safeguards its right to pursue arbitration by doing "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration").

The parties met and conferred regarding these issues on December 18, 2020, and subsequently stipulated that Young Living would move to transfer venue before seeking to compel arbitration.  *See* Dkt. No. 5 at 2.

Plaintiff agreed to Young Living's U.S. Member Agreement, which provides, through two valid, mandatory forum-selection clauses, that disputes between the parties—including the kind at issue here—be resolved exclusively in Salt Lake City, Utah. *See* Ex. B at §§ 13.2.2-13.3; Ex. A at § 11. The United States Supreme Court has been clear: "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in the clause." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 59-60 (2013). Indeed, recognizing the validity of these provisions, two other federal courts have recently transferred putative class actions by other Young Living members to the District of Utah pursuant to forum-selection clauses functionally identical to the one at issue here. *See O'Shaughnessy v. Young Living Essential Oils, LC*, 1:19-cv-00412-LY, ECF No. 74 at 9 (W.D. Tex. June 29, 2020); *Penhall v. Young Living Essential Oils, LC*, 3:19-cv-02340-JLS-RBB, ECF No. 36-1 (S.D. Cal. Aug. 17, 2020).[3]

Transfer is also appropriate because Salt Lake City is clearly the more convenient forum. Because Young Living and its employees reside and do business in Utah, it is highly likely that most, if not all, of the relevant evidence will be located there. And as this Court has acknowledged in other class actions, Plaintiff's Minnesota residence is of little import because she seeks to represent a putative nationwide class.

Thus, either analysis warrants the same result: this case should be transferred to the District of Utah, Salt Lake City Division pursuant to 28 U.S.C. § 1404(a).

---

[3] For the Court's convenience, these orders are attached as Exhibits A-B to the Declaration of Steven L. Schleicher ("Schleicher Declaration") filed concurrently with this motion.

## II.    BACKGROUND

Young Living is a company that makes essential oils and wellness products.  A consumer can purchase these products at retail prices, or, alternatively, can sign up to become a Young Living member and purchase the products at wholesale prices.  Barrow Decl. at ¶ 16.

Plaintiff has been a Young Living member since at least 2014.  Barrow Decl. at ¶ 10.  To create her membership, Plaintiff agreed to be bound by the terms of the Young Living member agreement.  *Id.*  To continue her membership, she has also agreed to be bound by amended versions of the Young Living member agreement from time to time. *Id*.  Most recently, in February 2020, Plaintiff expressly agreed to be bound by Young Living's (1) updated U.S. Member Agreement; (2) updated U.S. Policies and Procedures; and (3) updated Compensation Plan, all of which were distributed to members prior to and went into effect on January 1, 2020 (collectively, the "Agreement").  *See* Barrow Decl. at ¶¶ 10-15 and Exs. A-C.

More specifically, Young Living membership records show that Plaintiff logged into her member account on the Young Living website on February 4, 2020.  Barrow Decl. at ¶ 11.  Upon accessing her account, the screen displayed the following:

> I have read and agree to be bound by the terms and conditions of the Agreement (which includes this Member Agreement, the Policies and Procedures, Privacy Policy, and the Compensation Plan). I certify that I am 18 years old and legally able to enter into the Agreement. I understand that I have the right to terminate my Young Living Member Agreement at any time, with or without reason, by sending written notice to the Company at the above listed address. I understand that I must purchase one of the enrollment options in order to qualify as a member and receive whole sale pricing.

Barrow Decl. at ¶ 11.

Below this text, there were five hyperlinks titled:  (1) Policies & Procedures; (2) Compensation Plan; (3) Terms and Conditions of the Compensation Plan; (4) Privacy Policy; and (5) Member Agreement.  *Id.* at ¶ 12.  Below these hyperlinks, there was a checkbox and clear explanation of what clicking it meant:  "By clicking this box, I agree to these statements and to be bound by the terms and conditions of the Agreement. . . ."  *Id.* at ¶ 14.  Young Living computer systems recorded Plaintiff's decision to click the checkbox on February 4, 2020, and then click "Agree and Continue," thus confirming acceptance of the updated Agreement.  *Id.* at ¶ 15.

The Agreement accepted by Plaintiff in that process contains two mandatory forum-selection clauses and a binding arbitration clause, which together require that all disputes between the parties be resolved in Salt Lake City, Utah:

> [A]ny controversy or claim **arising out of or relating to** the Agreement, or the breach thereof, will be settled by arbitration.
> . . .
> All arbitration proceedings **will be held in Salt Lake City, Utah**
> . . . .
> Jurisdiction and venue of any matter not subject to arbitration **will reside exclusively in** any state or federal court located in **Salt Lake City, Utah**
> . . . .
> The parties consent to jurisdiction and venue before any state or federal court located in **Salt Lake City, Utah**, for any legal action not subject to arbitration
> . . . .

*See* Ex. B at §§ 13.2.2-13.3 (emphases added); Ex. A at § 11 (emphasis added).[4]

---

4    The Agreement also specifies that "[t]he Agreement will be governed by and construed in accordance with the laws of the State of Utah without regard to principles of conflicts of laws."  Ex. B at § 13.3.

Further, the Agreement also expressly governs the parties' rights and responsibilities with respect to members' purchases of, and disputes regarding, Young Living products. For instance, the Agreement says "[s]ubject to Young Living's acceptance of the Member Agreement, Young Living grants you the right to [] [p]urchase Young Living products at wholesale prices." *See* Ex. A at § 2. The Agreement further provides guidelines for members to return unused or unwanted Young Living products about which they are "dissatisfied." *See* Ex. B at § 11.1.1. And the Agreement also governs advertising and marketing claims regarding Young Living products. *See* Ex. B at § 5.3 (detailing the parties' obligations regarding "product claims").

Plaintiff purchased the essential oils at issue in her lawsuit through her Young Living membership, as evidenced by the fact that she paid wholesale prices (available only to members) for such purchases. Barrow Decl. at ¶ 18. Furthermore, Plaintiff should be aware of the applicability of the Agreement to disputes regarding marketing claims because Young Living has previously invoked its rights under the Agreement in a dispute with Plaintiff about her own inappropriate marketing claims in reselling Young Living essential oil products—the exact issue Plaintiff challenges in her complaint. *See* Ex. D. at 1 (notifying Plaintiff that her own website's advertising claims about Young Living products "are not compliant with Section 5.3.1 of Young Living's policies and procedures" because they impermissibly suggest the products can be used in the "diagnosis, cure, mitigation, treatment, or prevention of diseases"); *see also id.* ("As a member of Young Living[,] your membership is governed and regulated by the [Policies and Procedures] . . .").

On December 3, 2020, Plaintiff filed a putative class action in this Court on behalf of a purported national class, a multistate class, and a Minnesota subclass. Her allegations in support of each are largely the same: she alleges that Young Living misrepresented the health-related benefits of its essential oils and other products by marketing them as being "therapeutic-grade" and conferring "a healthy or medicinal benefit" that they did not confer. *See* Dkt. 1 at ¶¶ 69-92.

This dispute belongs in Utah, as the parties agreed.

## III.   LEGAL STANDARD

A "bifurcated system of analysis" applies to motions to transfer pursuant to § 1404(a), "depending upon whether a case involve[s] a forum-selection clause." *In re Union Elec. Co.*, 787 F.3d 903, 906 (8th Cir. 2015). Where a valid forum-selection clause exists, "proper application of 1404(a) requires that [the] clause be given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 59-60 (2013) (internal quotations omitted); *see also United Fire & Cas. Co. v. Weber, Inc.*, 434 F. Supp. 3d 729, 732 (D. Minn. 2020) (same). "[A] forum selection clause may be set aside only where the enforcement of the clause would be 'unjust or unreasonable or invalid.'" *United Fire*, 434 F. Supp. at 733 (quoting *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999)). "This is a high bar, requiring, for example, that the clause was included in the contract through 'fraud or overreaching,'" *id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)), or where a party would "for all practical purposes be deprived of his day in court." *M/S Bremen*, 407 U.S. at 18. But

absent such extraordinary circumstances, "the interest of justice is served by holding parties to their bargain." *Atl. Marine*, 571 U.S. at 66 (quoting 28 U.S.C. § 1404(a)).

If a court determines that the forum-selection clause is valid, it then considers the public interest factors, particularly, "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62, n.6. The party opposing transfer bears the burden to show that such factors "overwhelmingly disfavor" transfer to the agreed-upon forum. *Graphic Sys., Inc. v. Avanti Comput. Sys. Ltd.*, 2018 WL 1277007, at *2 (D. Minn. Mar. 12, 2018) (Davis, J.). Notably, where a valid forum-selection clause exists, the court may ***not*** consider private interests such as access to evidence, the availability and cost of compulsory process for attendance, and other practical problems affecting the convenience of the parties, because the parties have already conceded such issues by agreeing upon the contractually-specified forum. *Id*.

In addition, even without a valid forum selection clause, a court may "[f]or the convenience of the parties and witnesses, and in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought." *Perrill v. Equifax Info. Servs., LLC*, 2014 WL 2986665, at *3 (D. Minn. June 30, 2014) (Davis, J.). And while "deference is [typically] given to the plaintiff['s] choice of forum," as this Court has acknowledged, such deference is "greatly reduced" and should not defeat a transfer motion where the plaintiff has, among other things, proposed a nationwide class and the facts show that the witnesses and evidence are housed in another, more convenient, forum.

7

*See, e.g., id.* at *6 (transferring putative nationwide class action from Minnesota to Texas on the basis that "[c]ritical events" occurred there and the majority of witnesses and evidence resided there).

In determining whether to transfer a case under § 1404(a), a court "is not limited to a determination on the pleadings. A court may consider undisputed facts, presented through affidavits, depositions, stipulations, and other relevant documents." *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 883 (D. Minn. 2015).

## IV.   ARGUMENT

The Court should transfer this case to the District of Utah for at least two reasons. ***First***, the Court can, and should, transfer the case under § 1404(a) to the District of Utah because the parties agreed to resolve their disputes in that forum, and no public interest factors counsel or compel ignoring that agreement. ***Second***, in the alternative, the Court can, and should, transfer the case under a traditional § 1404(a) analysis because the District of Utah is the more convenient forum for resolution of the parties' dispute and, critically, the appropriate forum to compel arbitration in Utah.

### A.   The Court Should Enforce the Parties' Agreed-Upon, Mandatory Forum-Selection Clauses Under § 1404(a).

#### 1.   Plaintiff Consented to the Agreement and Its Forum-Selection Clauses.

The parties' Agreement includes unambiguous, mandatory forum-selection clauses that require **any dispute** between the parties to be decided—whether in arbitration or court—in Salt Lake City, Utah:

> [A]ny controversy or claim arising out of or relating to the Agreement, or the breach thereof, will be settled by arbitration.
>
> . . .
>
> Jurisdiction and venue of any matter not subject to arbitration **will reside exclusively in** any state or federal court located in **Salt Lake City, Utah**. .
>
> . . . . .
>
> The parties consent to jurisdiction and venue before any state or federal court located in **Salt Lake City, Utah**, for any legal action not subject to arbitration.

*See* Ex. B at §§ 13.2.2-13.3 (emphasis added); Ex. A at § 11 (emphasis added).

As set forth in detail above, Plaintiff most recently consented to these provisions in February 2020 by affirmatively clicking a checkbox below conspicuous hyperlinks to the Agreement containing these terms and next to clear notice that "By clicking this box, I agree to these statements and to be bound by the terms and conditions of the Agreement . . . ."  Barrow Decl. at ¶ 14.  This clear and conspicuous notice accompanied by an affirmative act of acceptance constitutes consent.  *See, e.g.*, *Rasschaert v. Frontier Commc'ns Corp.*, 2013 WL 1149549, at *6 (D. Minn. Mar. 19, 2013) ("In fact, most courts that have considered the issue have upheld arbitration and forum selection clauses in so-called clickwrap or shrinkwrap form contracts, which occur when the terms are provided online or only after plaintiffs have manifested assent.") (internal quotations omitted); *Heath v. Travelers Cos.*, 2009 WL 1921661, at *4 (D. Minn. July 1, 2009) ("[Plaintiff] clicked an emailed hyperlink to indicate that he had read, understood, and agreed to be bound by the Arbitration Policy.  This conduct was sufficient to manifest his assent to be bound by the Arbitration Policy."); *Siebert v. Amateur Athletic Union of the U.S., Inc.*, 422 F. Supp. 2d 1033, 1039-40 (D. Minn. 2006) ("The AAU requires that those wishing to become members 'click' on the page which states that any disputes are subject to

arbitration.  This Court finds that the 'click' represents assent to the contract, including the arbitration clause.").  Plaintiff is therefore bound by the Agreement and its forum-selection clauses.

At least two federal courts have reached the same conclusion with respect to Young Living's member agreements and consent process specifically.   In those cases, Young Living members similarly attempted to ignore the forum-selection clauses in their respective member agreements, but both courts held that the forum-selection clauses in the agreements were valid, mandatory, and required transfer to Salt Lake City, Utah.  *See, e.g.*, *O'Shaughnessy v. Young Living Essential Oils, LC*, No. 1:19-cv-00412-LY, ECF No. 74 at 9 (W.D. Tex. June 29, 2020) (concluding that "[t]he provisions concerning jurisdiction and venue in the Member Agreement and Policies and Procedures signed by the parties constitute a valid forum-selection clause"); *Penhall v. Young Living Essential Oils, LC*, 3:19-cv-02340-JLS-RBB, ECF No. 36-1 (S.D. Cal. Aug. 17, 2020) (same).[5]

### 2.     The Forum-Selection Clauses Apply to Plaintiff's Claims.

Not only did Plaintiff agree to the forum selection clauses in the Agreements, the dispute presented here falls within their scope.

The Agreement broadly requires the parties to resolve "**any** controversy or claim **arising out of or relating to** the Agreement" in Salt Lake City, Utah.  *See* Ex. B at §§ 13.2.2-13.2.3 (emphasis added); *see also* Ex. A at § 11 ("[t]he parties consent to jurisdiction

---

[5]    As noted above, Young Living has provided copies of these orders as Exhibits A-B to the Schleicher Declaration.

and venue before any state or federal court located in Salt Lake City, Utah, for ***any legal action*** not subject to arbitration.") (emphasis added).  "Courts read forum selection clauses using such language [i.e., 'pertaining' or 'relating'] broadly" and apply them to tort claims. *DesignSense, Inc. v. MRIGlobal*, 2013 WL 3205569, at *2 (D. Mo. June 25, 2013); *see also Leonard v. Del. N. Cos. Sport Serv.*, 861 F.3d 727, 731 (8th Cir. 2017) (holding that arbitration provision requiring "any dispute arising from [plaintiff's work]" applied to plaintiff's fraud claim); *Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997) (holding that "arising from" or "relating to" language in arbitration agreement "constitutes the broadest language the parties could reasonably use to subject their disputes to that form of settlement").

In her Complaint, Plaintiff alleges that Young Living purportedly made misrepresentations about the health and wellness benefits of its products, and as a result Plaintiff was overcharged for her purchases of those products. Dkt. No. 1 ¶¶ 17-28. Plaintiff purchased these products at discounted prices pursuant to her member relationship with Young Living.  *See* Ex. A at § 2; *see also* Barrow Decl. at ¶ 18.  Plaintiff seeks damages relating to these purchases on the basis of consumer fraud, deceptive trade practices, and unjust enrichment claims.  *See* Dkt. No. 1 at ¶¶ 69-98.  These claims arise out of and relate to the Agreement between the parties because the Agreement governs the parties' rights and obligations with respect to the purchase of, and disputes about, members' purchases of Young Living products, as outlined below.

First, the Agreement "grants" members the exclusive "right" to, among other things, "[p]urchase Young Living products at wholesale prices."  Ex. A at § 2.  Given that Plaintiff

11

paid wholesale prices for the products challenged in her Complaint, she necessarily purchased them pursuant to the Agreement. Barrow Decl. at ¶¶ 16-18.

Second, the Agreement also governs the parties' rights and responsibilities with respect to product complaints and outlines procedures by which members can seek refunds and returns for any product about which they are "dissatisfied." Ex. B at § 11.

Finally, the Agreement also outlines the parties' rights and responsibilities with respect to product marketing and advertising claims relating to Young Living products— exactly the kinds of claims that Plaintiff challenges in this suit. *See id.* at § 5. In fact, Young Living has previously invoked the Agreement against Plaintiff because Young Living believed *Plaintiff* made unsubstantiated claims regarding the health and wellness benefits of Young Living essential oil products—in other words, the same kinds of claims that are now the crux of Plaintiff's complaint against Young Living. *Compare* Ex. D at 1 ("Recently it has come to our attention that you control and or operate the following [websites] . . . that currently contain claims about Young Living's products that are (1) not supported by competent and reliable science, and/or (2) the claims are intended to diagnose, mitigate, cure, prevent or treat diseases"), *with* Dkt. No. 1 at ¶¶ 34-36 (alleging that representations on Young Living products "are false or misleading or were not substantiated at the time the representations were made"). Plaintiff's claims thus undoubtedly "aris[e] out of" or "relate to" the Agreement. *Fleet Tire Serv. of N. Little Rock*, 118 F.3d at 621.

It is of no moment that Plaintiff did not cite the Agreement in her Complaint. Plaintiffs cannot avoid forum selection clauses by failing to cite an applicable agreement

in their pleadings.  *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997) ("Strategic or artfully drawn pleadings, however, will not work to circumvent an otherwise applicable forum selection clause."); *Bae Sys. Land & Armaments L.P*, 124 F. Supp. 3d at 883 (a court may look outside the pleadings to consider "undisputed facts, presented through affidavits, depositions, stipulations, and other relevant documents," in connection with a motion to transfer venue).  A facial analysis of the claims and facts alleged in the Complaint is all that is necessary to determine whether the dispute falls within the broad orbit of the forum selection clause here, and given that Plaintiff's claims relate directly to her purchases made pursuant to the Agreement, this dispute is well within its scope.  *UAW v. Gen. Elec. Co.*, 714 F.2d 830, 831-32 (8th Cir. 1983) (whether a party's claim is subject to an arbitration agreement is a matter of contract construction, which is a question of law).

### 3. The Forum-Selection Clauses Are Valid and Enforceable.

Where a forum-selection clause applies, "courts generally enforce that agreement unless it is unjust or unreasonable."  *Hitachi Cap. Am. Corp. v. McCollum*, 2020 WL 3977229, at *6 (D. Minn. July 14, 2020).  The party opposing the enforcement of the forum-selection clause bears the burden of showing the clause is unjust or unreasonable, *Atl. Marine*, 571 U.S. at 581, and must do so by showing that (1) the clause is the product of fraud or overreaching; (2) the party would effectively be deprived of her day in court if the clause is enforced; or (3) enforcing the clause would contravene the public policy of the forum in which suit is brought, *Hitachi Capital*, 2020 WL 3977229 at *7.  None of these factors are present here.

13

As a threshold matter, Plaintiff cannot argue that the forum-selection clauses were the product of fraud or overreaching.  The clauses were "clearly written and [] obvious, distinct paragraphs" in the Agreement that Plaintiff voluntarily executed.  *See id.* at *8; *Gen. Mills Operations, LLC v. First Star Custom Foods, Ltd.*, 789 F. Supp. 2d 1148, 1158 (D. Minn. 2011), *aff'd*, 703 F.3d 1104 (8th Cir. 2013) (noting that "small and boilerplate" print is "not enough to render the contract unenforceable").  Nor can Plaintiff argue that the clauses are unreasonable because she failed to review them before executing the Agreement.  *Hitachi Capital*, 2020 WL 3977229 at *9 ("[A]ny suggestion that [plaintiff] failed to review these specific terms before signing does not, in any way, make these clauses the product of overreaching or otherwise unreasonable.").  In fact, and as previously discussed, Plaintiff was required to, and did, check a box certifying that she had read the Agreement.  *See* Barrow Decl. at ¶ 11.

Plaintiff fares no better under the second or third factors.  With respect to the second factor, it is well established that "mere inconvenience to a party is an insufficient basis to defeat an otherwise enforceable forum selection clause."  *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 790 (8th Cir. 2006) (internal citations and quotations omitted).  Rather, "a party seeking to avoid [her] promise must demonstrate that proceeding in the contractual forum will be so gravely difficult and inconvenient that [she] will be for all practical purposes deprived of [her] day in court."  *Id.*  Such circumstances are not present here.  At worst, Plaintiff can argue that she would incur more expenses litigating this dispute in Utah than Minnesota, but that is simply not enough to overcome the parties' agreement.  *See Brown v. Glob. Cashspot Corp.*, No. 17-cv-1348 (JRT/DTS), 2017 WL

3278938, at *2 (D. Minn. July 14, 2017) ("[T]he higher cost alleged . . . to litigate in Nevada does not rise to the level of depriving [defendant] of his day in court."); *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 753 (8th Cir. 1999) (enforcing a forum-selection clause requiring litigation in Utah over plaintiff's objection that he could not afford to litigate there).

Finally, Plaintiff cannot show that the forum-selection clauses contravene Minnesota's public policy. To the contrary, "Minnesota courts routinely enforce such clauses and [] there is no public policy in Minnesota that contravenes the[ir] enforcement." *Airtel Wireless, LLC v. Mont. Elec. Co.*, 393 F. Supp. 2d 777, 785 (D. Minn. 2005).

Accordingly, the Agreement's forum-selection clauses are valid and enforceable.

### 4. The Public Interest Factors Weigh in Favor of Transferring the Case to the District of Utah.

As explained by the United States Supreme Court in *Atlantic Marine*, once a court determines that a forum-selection clause is valid and enforceable, all that is left is for a court to examine the public interest factors that are part of a traditional § 1404(a) transfer analysis. 571 U.S. at 64. Even then, "because [public-interest] factors will rarely defeat a [forum-selection clause], the practical result is that forum-selection clauses should control except in unusual cases." *Id.* This is not one of those "unusual" cases. All three public interest factors—the local interest in having localized controversies decided at home; administrative difficulties flowing from court congestion; and the interest in having the trial of a diversity case in a forum at home with the law—weigh in favor of transfer. *See, e.g.*, *Hitachi Capital*, 2020 WL 3977229, at *13.

15

*First*, the local interest in having localized controversies decided at home heavily favors enforcing the forum-selection clauses.   Here, Defendant Young Living is headquartered in Utah and employs thousands of employees, some of whom are potential witnesses, in that forum.   McKasson Decl. at ¶ 2.   Plaintiff, meanwhile, entered into a business relationship with a Utah corporation; agreed to have Utah law govern disputes between the parties; agreed to resolve disputes in arbitration in Utah; and based her claims on the alleged misrepresentations Young Living made in Utah.   This factor thus favors the Utah forum.

*Second*, issues of administrative congestion also favor Utah.   According to the most recent Federal Court Management Statistics, the median time between filing and disposition of a lawsuit in the District of Utah is 10.4 months, while the median time in Minnesota is 14.2 months—approximately 27% longer.[6]

*Third*, the last factor (concerning trial of a diversity case in a forum "at home with the law") also favors a transfer.   While Plaintiff brought claims under various states' laws, including Minnesota's, those claims are improper, as she agreed that "[t]he Agreement will be governed by and construed in accordance with the laws of the State of Utah without regard to principles of conflicts of laws."   Ex. B at § 13.3.   But even if other states' laws were to apply, this would be insufficient on its own to deny a transfer, particularly given

---

[6]   *See* United States District Courts, *National Judicial Caseload Profile* (2020), *available at* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf.

that Plaintiff's lawsuit does not raise any novel or complex questions of law, and the District of Utah is presumptively capable of applying the laws of Minnesota. *See Klatte v. Buckman, Buckman & Reid, Inc.*, 995 F. Supp. 2d 951, 957 (D. Minn. 2014) ("In any event, even if Minnesota law were to apply, federal district courts are 'faced almost daily with the task of applying some state's law other than [their own], and [they are] capable of resolving . . . dispute[s] under another state's law.'") (quoting *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001)).

Accordingly, the public factors considerations uniformly weigh in favor of transfer, and the Court may end its analysis there.

**B.     Alternatively, the Court Should Transfer this Case to the District of Utah Because It Is the More Convenient Venue.**

Alternatively, even if the Court takes issue with the applicability of the Agreement's forum selection clause, the Court may transfer the case to Utah under a traditional § 1404(a) analysis because a transfer "will serve the convenience of the parties and witnesses and will promote the interests of justice." 28 U.S.C. § 1404(a).  A traditional § 1404(a) analysis requires consideration of both public and private factors. *See Terra Int'l*, 119 F.3d at 691 (recognizing the analysis requires a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors").  As explained above, *supra* Section IV.A.4, the public factors favor Utah.  As explained below, so do the private factors.

### 1.    The District of Utah Is a Proper Venue.

As an initial matter, Plaintiff could have brought this action in the District of Utah, as venue is proper where the defendant "reside[s]."  28 U.S.C. § 1391(b)(1).  An entity with capacity to sue and be sued, such as Young Living, resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391(c)(2).  Here, Young Living resides in Utah because Young Living is headquartered there, it is the forum where alleged misrepresentations were made, and it is where Young Living employs thousands of employees and potential witnesses.  Declaration of Daniel McKasson ("McKasson Decl.) at ¶ 2.  Additionally, the District of Utah would have subject matter jurisdiction over this action for the same reason this Court does.  *See* 28 U.S.C. § 1332(d)(2).

### 2.    The Convenience of the Parties and Witnesses Favors Transfer to Utah.

With respect to the second factor, Utah is also the more convenient forum.  Because Young Living is headquartered in Utah, nearly all sources of proof, including relevant documents regarding marketing claims, substantiation, and sales, are located there.  McKasson Decl. at ¶ 4.  *See also In re Apple, Inc.*, 602 F.3d 909, 914 (8th Cir. 2010) (finding that transferee court would be more convenient in part because "much of Apple's relevant documentary evidence is located in its Cupertino headquarters").  The same is true for witnesses:  most of the individuals with relevant knowledge reside in Utah, some of whom are former Young Living employees beyond the subpoena power of this Court.  McKasson Decl. at ¶ 2.  Indeed, company records show 3,658 current or former Young

Living employees with current or last-known home addresses in Utah, whereas only **one** former Young Living worker, a farmhand, was identified with a Minnesota address. McKasson Decl. at ¶¶ 2-3. The convenience of the witnesses therefore weighs in favor of transfer. *See Graff*, 33 F. Supp. 2d at 1121 (convenience of the witnesses is an important factor because it determines the "relative ease of access to sources of proof"); *In re Apple*, 602 F.3d at 914 ("Apple's witnesses will suffer the 'personal costs associated with being away from work, family, and community.' These costs would be significantly minimized or avoided by transfer to Northern California").

### 3.    The Interests of Justice Favor Transfer to Utah.

In evaluating the interests-of-justice factor, courts consider: (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine local law. *Klatte*, 995 F. Supp. at 957. At least four of these factors favor transfer in this case.

Judicial economy favors transfer because, as previously discussed, the median time between filing and disposition of a lawsuit is faster in the District of Utah than the District of Minnesota. In any event, because the Court has yet to invest significant resources into this case, transfer would not require duplication of effort or otherwise waste judicial resources. *See In re Trusteeship Created by JER CRE CDO 2005-1, Ltd.*, No. 12-2791 (MJD/JSM), 2013 WL 1364258, at *4 (D. Minn. Apr. 4, 2013) ("This Court has not yet invested resources in this case. Transfer would not entail duplication because the case is at a very early stage.").

19

Comparative costs to the parties also weighs in favor of transfer. As set forth above, Young Living will incur far greater costs by litigating this matter in Minnesota than Plaintiff would by litigating in Utah because of the number of Young Living employees and nonparty witnesses that live in Utah. *See In re Apple*, 602 F.3d at 913.

For the same reason, the fifth factor (obstacles to a fair trial) also weighs in favor of transfer. Given the potential for nonparty witnesses that reside in Utah and the strong preference of courts for live testimony, litigating in Minnesota would pose an obstacle to Young Living receiving a fair trial. *See Klatte*, 995 F. Supp. 2d at 957 ("In addition, given the strong preference for live testimony, litigating in Minnesota presents an obstacle to Buckman receiving a fair trial, as several key witnesses are not located within the subpoena power of this Court. Litigating in New Jersey ameliorates each of these problems.").

Finally, the fourth factor (each party's ability to enforce a judgment) weighs in favor of transfer because Young Living does not regularly maintain assets in Minnesota, McKasson Decl. at ¶ 5, and Plaintiff would have to enforce any judgment obtained in the District in Utah. *See Valspar*, 50 F. Supp. 3d at 1157 ("Valspar's inability to enforce a judgment in this state also favors transfer. Kronos has no offices in Minnesota and there is no suggestion it has assets here, and hence Valspar appears unable to enforce a judgment against it in this state[.]"); *Klatte*, 995 F. Supp. 2d at 957 ("Buckman has no offices in Minnesota and there is no suggestion it has assets here, and hence Plaintiffs appear unable to enforce a judgment against it in this state.").

Most of the interests of justice factors thus weigh in favor of transfer. Indeed, only the second, sixth, and seventh factors could arguably weigh against transfer, and these

factors are less important in this case.  With respect to the second factor, a plaintiff's choice of forum is entitled to "greatly reduced" deference where, as here, Plaintiff seeks to represent a nationwide class that is likely to be comprised mostly of non-Minnesotans.  *See, e.g.*, *Perrill*, 2014 WL 2986665, at \*5; *see also Klatte*, 995 F. Supp. 2d at 957 (holding that plaintiff's choice of forum "garners less weight where, as here, the claims alleged in the action do not arise in the forum state").  Moreover, with respect to the sixth and seventh factors, as discussed above, the parties have agreed that Utah law governs their Agreement.  But "even if Minnesota law were to apply, federal district courts are 'faced almost daily with the task of applying some state's law other than [their own], and [they are] capable of resolving . . . dispute[s] under' another state's laws."  *Id.* (quoting *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001)).  Thus, these neutral factors do not themselves justify keeping this case in this Court.

Finally, the interests of justice weigh in favor of a transfer for a separate, independent reason.  *See Terra Int'l*, 119 F.3d at 691 (concluding that a district court may consider any relevant circumstance).  Specifically, because most courts have held that only a district court in the agreed-upon forum has authority to compel arbitration, *see* n.2, *supra*, transfer may be viewed a prerequisite to Young Living's ability to invoke the parties' arbitration clause.  Thus, denying Young Living's motion would needlessly complicate Young Living's right, and unfairly excuse Plaintiff's obligation, to resolve this case through arbitration.  Given that federal policy strongly favors arbitration, *Dominion Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720 (8th Cir. 2001), the Court should transfer the case so that Young Living can begin the process to compel arbitration pursuant to the

parties' Agreement.

For these reasons, the interests of justice weigh in favor of transfer, and the Court should grant Young Living's motion to transfer venue.

## V.     CONCLUSION

The Court should give effect to the parties' Agreement.  Because the two forum-selection clauses governing the relationship between the parties require that this dispute be resolved in Utah, and because Utah is the more convenient forum, the Court should transfer the case to the United States District Court for the District of Utah, Salt Lake City Division.

Dated: January 19, 2021

Respectfully submitted,

MASLON LLP

By: */s/ Steven Schleicher*
Steven Schleicher (#0260587)
Stephanie M. Laws (#0396174)
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4140
Telephone:  (612) 672-8200
steve.schleicher@maslon.com
stephanie.laws@maslon.com

KIRKLAND & ELLIS LLP

Olivia Adendorff
*(admitted Pro Hac Vice)*
Jeremy A. Fielding
*(admitted Pro Hac Vice)*
Rachael A. Rezabek
*(admitted Pro Hac Vice)*
1601 Elm Street
Dallas, TX 75201
Telephone:  (214) 972-1770
olivia.adendorff@kirkland.com

22

jeremy.fielding@kirkland.com
rachael.rezabek@kirkland.com

***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 19, 2021 a copy of the foregoing was forwarded to all counsel of record via the Court's ECF filing system.

Robert K. Shelquist
Rebecca A. Peterson
Lockridge Grindal Nauen P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401
rkshelquist@locklaw.com
rapeterson@locklaw.com

Gary M. Klinger
Mason Lietz & Klinger LLP
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
gklinger@masonllp.com

*/s/ Steven Schleicher*